No. 22-10918

In the
**UNITED STATES COURT OF APPEALS**
for the Fifth Circuit

**Antero Resources Corporation,**

*Plaintiff-Appellee/Cross-Appellant*

v.

**C&R Downhole Drilling Inc., et al.,**

*Defendants*

**John Kawcak,**

*Third Party Defendant-Appellant/Cross-Appellee*

**Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division**
*Honorable Terry R. Means, United States District Judge*
No. 4:16-CV-668-Y

**APPELLANT'S BRIEF**

**Decker A. Cammack**
dcammack@whitakerchalk.com
**Whitaker Chalk Swindle
 & Schwartz PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone:  817-878-0500
Facsimile:  817-878-0501

**Jeffrey S. Levinger**
jlevinger@levingerpc.com
**J. Carl Cecere (of counsel)**
ccecere@cecerepc.com
**Levinger PC**
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201
Telephone:  214-855-6817
Facsimile:  214-817-4509

*Attorneys for Appellant*

## CERTIFICATE OF INTERESTED PERSONS

No. 22-10918, *Antero Resources Corporation v. C&R Downhole Drilling Inc., et al. v. Kawcak*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## Defendant-Appellant

John Kawcak

## Counsel for Defendant-Appellant

Jeffrey S. Levinger
J. Carl Cecere (of counsel)
Levinger PC
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201

Decker A. Cammack
Whitaker Chalk Swindle
  & Schwartz PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102

## Plaintiff-Appellee

Antero Resources Corporation

## Counsel for Plaintiff-Appellee

Michael A. Heidler
Vinson & Elkins LLP
200 West 6th Street
Suite 2500
Austin, TX 78701

/s/ *Jeffrey* S. *Levinger*

**Jeffrey S. Levinger**

*Attorney of Record*
*for Appellant John Kawcak*

i

## REQUEST FOR ORAL ARGUMENT

Pursuant to 5TH CIR. R. 28.2.3, Appellant John Kawcak requests oral argument. This case involves an award of damages in excess of $11 million based on a claim for breach of fiduciary duty arising from Kawcak's employment with Appellee Antero Resources Corporation and his relationship with one of Antero's vendors. The principal issue is whether, as a matter of Texas law, Antero proved that it was damaged as a result of paying the vendor for its services. Particularly in light of the extensive record on appeal, which consists of over 30,000 pages, Kawcak believes that oral argument will assist the Court in evaluating the evidence and resolving the issues in this case.

**TABLE OF CONTENTS**

Certificate of Interested Persons ................................................................. i

Request for Oral Argument ...................................................................... ii

Table of Authorities .............................................................................. iv

Jurisdictional Statement ........................................................................ vi

Statement of Issues Presented for Review ................................................. vii

Statement of the Case ............................................................................ 1

I.     Factual History .......................................................................... 1

II.    Procedural History. ..................................................................... 2

Summary of the Argument ........................................................................ 5

Argument .............................................................................................. 7

I.     Standard of Review ..................................................................... 7

II.    Antero Failed to Prove That It Was Damaged by Kawcak's Conduct
       Because There Is No Evidence That Antero Paid the Robertson
       Companies More Than It Would Have Paid Non-Robertson Companies
       to do the Same Work. ................................................................. 7

III.   Alternatively, the District Court Erred by Denying Kawcak a  Credit
       for Antero's Settlement With the Robertson Companies Because Its
       Ruling Gave Antero More Than One Satisfaction for the Same
       Damages ................................................................................. 14

Conclusion ........................................................................................... 20

Certificate of Service ............................................................................. 21

Certificate Regarding Privacy Redactions and Virus Scanning ....................... 22

Certificate of Compliance With Type-Volume Limit .................................... 22

# TABLE OF AUTHORITIES

## Cases

*Ayres v. Sears, Roebuck & Co.*,
  789 F.2d 1173 (5th Cir. 1986)....................................................................7

*Boeing Co. v. Shipman*,
  411 F.2d 365 (5th Cir. 1969) (en banc).....................................................7

*Borg-Warner Corp. v. Flores*,
  153 S.W.3d 209 (Tex. App.—Corpus Christi-Edinburg 2004),
  *rev'd on other grounds*, 232 S.W.3d 765 (Tex. 2007).............................20

*Coastal Agr. Supply, Inc. v. JP Morgan Chase Bank*,
  759 F.3d 498 (5th Cir. 2014).....................................................................15

*Crown Life Ins. Co. v. Casteel*,
  22 S.W.3d 378 (Tex. 2000)........................................................................15

*Dalworth Restoration, Inc. v. Rife-Marshall*,
  433 S.W.3d 773 (Tex. App.—Fort Worth 2014, no pet.)....................15, 18

*Davis v. Odeco, Inc.*,
  18 F.3d 1237 (5th Cir. 1994).....................................................................15

*Dyll v. Adams*,
  167 F.3d 945 (5th Cir. 1999).............................................................8, 9, 14

*First Title Co. of Waco v. Garrett*,
  860 S.W.2d 74 (Tex. 1993).......................................................................16

*Heller Financial, Inc. v. Grammco Computer Sales, Inc.*,
  71 F.3d 518 (5th Cir. 1996).........................................................................7

*McCandless v. Beech Aircraft Corp.*,
  779 F.2d 220 (5th Cir. 1985).......................................................................7

*McKnight v. Hill & Hill Exterminators, Inc.*,
  689 S.W.2d 206 (Tex. 1985)........................................................................9

*Pike v. Texas EMC Management, LLC*,
  610 S.W.3d 763 (Tex. 2020)......................................................................10

*Polk v. St. Angelo*,
  No. 03-01-00356-CV, 2002 WL 1070550
  (Tex. App.—Austin May 31, 2002, pet. denied) ..................................................18

*Sky View at Las Palmas, LLC v. Mendez*,
  555 S.W.3d 101 (Tex. 2018) ...............................................................................20

*Southwest Battery Corp. v. Owen*,
  115 S.W.2d 1097 (Tex. 1938) ...............................................................................9

*Stewart Title Guar. Co. v. Sterling*,
  822 S.W.2d 1 (Tex. 1991) ........................................................................... 15, 16

*Utts v. Short*,
  81 S.W.3d 822 (Tex. 2002) .................................................................................18

**Statutes**

28 U.S.C. § 1291 ..................................................................................................... vi

28 U.S.C. § 1332(a) ................................................................................................ vi

**Rules**

5TH CIR. R. 28.2.3.................................................................................................... ii

## JURISDICTIONAL STATEMENT

(1)    The district court had jurisdiction over this case under 28 U.S.C. § 1332(a) because Antero is a citizen of Colorado and Delaware, Kawcak is a citizen of Texas, and the amount in controversy exceeds $75,000.  (ROA.1000, 18214)

(2)    This is an appeal from an amended final judgment entered on August 25, 2022, which disposed of all claims against all parties (ROA.29424 [RE 6]), and from an order entered on August 19, 2022 denying Kawcak's motion for judgment as a matter of law and motion to alter or amend the judgment (ROA.29416 [RE 7]). Kawcak timely filed a notice of appeal on September 23, 2022 (ROA.29425 [RE 2]), and Antero filed its own notice of appeal on September 26, 2022 (ROA.29427). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

### STATEMENT OF ISSUES PRESENTED FOR REVIEW

This appeal concerns a dispute between Antero Resources Corporation, a publicly-traded oil and gas exploration company, and John Kawcak, a former Antero employee who served as the superintendent of Antero's operations in West Virginia. Antero alleged that Kawcak accepted improper financial benefits from one of Antero's drilling contractors—referred to as "the Robertson Companies"—and that the Robertson Companies significantly overcharged Antero for their services. The jury agreed with Antero in part, finding that Kawcak breached his fiduciary duties to Antero and that his breach caused $11,122,140 in damages—the exact figure that Antero's damages expert claimed was the amount of the Robertson Companies' overbilling. The district court's judgment against Kawcak gives rise to the following issues, which are governed by Texas law:

1.    Did Antero fail to prove that it in fact was damaged as a result of retaining and paying the Robertson Companies, when (a) Antero's damages expert compared only the time it took the Robertson Companies to do the work with the time it would have taken other companies to do the work, failing to consider the hourly or daily rates that the other companies would have charged for that work; and (b) the evidence shows that the only available and eligible company that could have done the work would have charged Antero more than what the Robertson Companies charged?

2.     Alternatively, did the district court err by failing to give Kawcak a credit for Antero's previous settlement with the Robertson Companies, thus giving Antero more than one satisfaction for its claimed damages?

## STATEMENT OF THE CASE

## I.    Factual History.

Antero Resources Corporation is a Colorado-based oil and gas production company that went public in 2013.  (ROA.24798, 29584) Along with its affiliated companies, Antero acquires land, hires vendors to drill and complete wells, and then markets and sells the oil and gas to other entities.  (ROA.24798) A substantial part of Antero's operations are in the Marcellus Shale located in West Virginia. (ROA.24798)

John Kawcak began working for Antero in 2002, around the time it was founded, making him one of its first employees.  (ROA.24799) Although Kawcak lives in Texas, he spent significant time in West Virginia between 2009 and 2015 serving as Antero's operations supervisor.  (ROA.18214, 24799) In that role, Kawcak was the most senior field person for Antero's West Virginia operations and was responsible for supervising vendors, overseeing expenditures, and approving invoices of up to $100,000.   (ROA.24799)  Kawcak resigned from Antero in November 2015.  (ROA.24800, 29605)

Between 2011 and 2015, and while Kawcak was serving as Antero's operations supervisor, various companies affiliated with a Texas businessman named Tommy Robertson served as vendors for Antero in West Virginia.  (ROA.88, 24799, 29588) Two of the Tommy Robertson Companies—as the parties referred to

them—were C&R Downhole Drilling and Big Tex Well Services. (ROA.24799, 29588) Together, they provided services relating to "drillout" operations—the part of the well completion process in which plugs placed in the wellbore during hydraulic fracturing are drilled out so that hydrocarbons can flow to the surface. (ROA.24799) The Robertson Companies performed drillout operations on over 200 Antero wells in West Virginia, and all of them were successfully put into production. (ROA.30011, 30044, 30287) But the price of oil and gas dropped significantly in late 2014, and Antero began looking to its vendors to cut costs. (ROA.29591, 29965)

## II.    Procedural History.

After the Robertson Companies refused to participate in an audit that Antero demanded in 2015, Antero sued the Robertson Companies and Tommy Robertson in federal district court for allegedly "systematically and deliberately overbilling" Antero for their services. (ROA.87, 91, 93)  As a result of discovery directed to the Robertson Companies and various third parties, Antero learned that the Robertson Companies had made various payments to Kawcak and at least two of his subordinates beginning in 2012.  (ROA.29611-13, 29735, 29739) In April 2018, Antero sued Kawcak in Texas state court alleging breach of fiduciary duty based on his role in what Antero described as a "kickback and bribery scheme." (ROA.19012)

Kawcak was drawn into the federal case in January 2019 when the Robertson Companies filed a third-party complaint against him for contribution.  (ROA.18213)

Kawcak answered and filed a counterclaim against Antero for putting a hold on over 130,000 shares of stock in an Antero subsidiary that were in the custody of a stock transfer agent in Kawcak's name.  (ROA.19776, 19785)  Although Antero initially sought to stay Kawcak's claims (ROA.20459), it changed course after settling with the Robertson Companies and Tommy Robertson in July 2020 (ROA.21791).  At that point, it sought and obtained leave to assert its state court claims against Kawcak in the federal case "so that the dispute can be resolved in a single action." (ROA.21792) And it added a claim against Kawcak under the RICO statute. (ROA.24322)

The case proceeded to trial before a jury in April 2022.  (ROA.29524) Antero contended that the purported "kickbacks" that Kawcak received from the Robertson Companies enabled them to overcharge Antero by over $11 million, an amount Antero's damages expert derived by comparing the time it took the Robertson Companies to do the work with the time he claimed it would have taken other companies to do the same work.  (ROA.29542-45, 29551, 30004-05) Kawcak denied that the payments were "kickbacks," contending instead that they were compensation for goods and services he had provided to Tommy Robertson independently of his employment with Antero. (ROA.29557-58) He also contended that Antero was not damaged in any event because it would have had to pay more for the drillout services of other companies.  (ROA.29562, 30623, 30634).

The jury agreed with Antero in part.  It found that Kawcak breached his fiduciary duties to Antero, that the breach caused damages to Antero of $11,122,140, and that Kawcak accepted benefits of $775,549.39 from Tommy Robertson or his companies in violation of Kawcak's fiduciary duties.  (ROA.25023-24 [RE 4, 5]) But the jury declined to award Antero actual damages for its fraud claim or punitive damages for its claim of malice and gross negligence, and it answered "no" to a question asking whether Kawcak received unjust enrichment from Antero. (ROA.25025-27)  Finally, on Kawcak's claim against Antero relating to the hold on his company stock, the jury declined to find that Antero had converted Kawcak's property.  (ROA.25028)[1]

The district court denied Kawcak's motion for judgment as a matter of law and motion to alter or amend the judgment (ROA.29416 [RE 7]), and partially granted Antero's motion for disgorgement (ROA.29418).  Based on those rulings and the jury's verdict, the court signed an amended final judgment awarding Antero the total amount of $11,897,689.39 plus pre- and post-judgment interest, along with the recovery of Kawcak's 130,170 shares of the Antero subsidiary stock being held by the stock transfer agent.  (ROA.29424 [RE 6])  Kawcak appealed (ROA.29425

---

[1] The jury did not address Antero's RICO claim because the court declined to submit it (ROA.30563), apparently based on Kawcak's motion for judgment as a matter of law on that claim (ROA.24972).

[RE 2]), and now challenges only the portion of the judgment corresponding to the jury's damages award of $11,122,140.

## SUMMARY OF THE ARGUMENT

The portion of the judgment awarding $11,122,140 against Kawcak cannot stand for either of two reasons.

*First*, Antero failed to prove the fact of damages, which is fatal to recovery under applicable Texas law. Antero claimed that Kawcak's acceptance of improper financial benefits from the Robertson Companies enabled the Robertson Companies to significantly overcharge Antero for their services. In an effort to quantify the alleged overcharge, Antero's expert compared the time it took the Robertson Companies to do the work with the time it would have taken other companies to do the work, and came up with a percentage that he applied to the Robertson Companies' invoices to arrive at an overcharge figure of $11,122,140. But Antero's expert failed to consider an essential component in his damages analysis—the *rates* the other companies would have charged to do the work on a supposedly more efficient basis, and how those rates compared to the rate charged by the Robertson Companies. That missing information makes it entirely uncertain whether Antero in fact was overcharged as a result of the Robertson Companies' alleged inefficiency. And while that uncertainty alone is fatal to recovery in Texas, the evidence also shows that Antero was not damaged at all by paying the Robertson

Companies because the only available and eligible competitor would have charged Antero more to do the work on the expert's assumed timetable.

*Second*, even if Antero were entitled to recover damages from Kawcak, the district court erred by denying Kawcak a credit for the amount of Antero's pretrial settlement with the Robertson Companies. Kawcak's right to a settlement credit is derived from Texas's one-satisfaction rule, which prohibits Antero from recovering both an award of damages against Kawcak and a settlement from the Robertson Companies that each compensates for the same injury—the alleged overcharging for services rendered. Contrary to the district court's reasoning, Kawcak did not lose the right to that credit merely because he did not prove the amount of the settlement at trial. Under Texas law, the determination whether to award a settlement credit is for the court, not the jury, and thus the nonsettling defendant need not offer evidence or obtain jury findings on the settlement-credit issue in order to be entitled to a credit. The district court was also wrong in faulting Kawcak for not moving to compel production of the settlement agreement. Kawcak in fact did ask the court in his pretrial brief to make Antero disclose the settlement amount. But even if he had made no pretrial request, he still would be entitled to a settlement credit (and the discovery to support it) because the settlement did not become relevant until after the jury returned its verdict awarding damages to Antero. Accordingly, at the very

6

least, the judgment should be reversed and the case remanded to enable Kawcak to prove the amount of the settlement that should be credited against a damages award.

**ARGUMENT**

## I.     Standard of Review.

The standard for reviewing the issues in this case is established in *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc) and its progeny: "[F]actual issues are reviewed only for the presence of substantial evidence supporting the verdict while legal issues are reviewed de novo." *Heller Financial, Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 523 (5th Cir. 1996).  In reviewing both factual and legal issues in a diversity case, the Court refers to state law "for 'the kind of evidence that must be produced to support a verdict.'" *Ayres v. Sears, Roebuck & Co.*, 789 F.2d 1173, 1175 (5th Cir. 1986*)* (quoting *McCandless v. Beech Aircraft Corp.*, 779 F.2d 220, 223 (5th Cir. 1985)).

## II.     Antero Failed to Prove That It Was Damaged by Kawcak's Conduct Because There Is No Evidence That Antero Paid the Robertson Companies More Than It Would Have Paid Non-Robertson Companies to do the Same Work.

In response to Question 2, the jury found that the sum of $11,122,140 would compensate Antero for the damages caused by Kawcak's conduct, which related to his dealings with the Robertson Companies.  (ROA.25023)  The jury's number came directly from Antero's damages expert, Steve Taylor, who contended that of the $150,000,000 Antero paid the Robertson Companies for drillout services,

7

$11,122,140 was "overspent" because the Robertson Companies took more time and were less efficient than certain other companies would have been in doing the same work. (ROA.30004-05, 30948-49) But Taylor's analysis omitted a critical component—the *rates* the non-Robertson Companies would have charged Antero to do the work, and how those rates *compare* to the rate of the Robertson Companies. As a result of that omission, it is uncertain whether Antero in fact was damaged by the Robertson Companies' billing. And while that uncertainty alone is fatal to Antero's recovery, the evidence conclusively demonstrates that Antero was not damaged at all by paying $150,000,000 to the Robertson Companies because the only available and eligible competitor would have charged Antero *more* to do the work on the more efficient basis that Taylor assumed.[2]

Texas law, which governs this diversity case (ROA.24323), draws "a distinction between uncertainty about the fact of damages and uncertainty about the amount of damages." *Dyll v. Adams*, 167 F.3d 945, 947 (5th Cir. 1999). "Uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as

---

[2] Kawcak timely raised this no-damages argument before the case was submitted to the jury in (1) his pretrial brief (ROA.24180-81); (2) his Rule 50(a) motion seeking judgment as a matter of law "due to insufficient evidence on damages" (ROA.24809); (3) his oral motion for judgment at the close of Antero's case-in-chief (ROA.30219); (4) his arguments concerning the scope of his damages expert's opinions (ROA.30234); and (5) his objections to the jury charge on damages (ROA.30561). Thus, the district court's post-trial statement that Kawcak's no-damages argument was "untimely" (ROA.29416) does not withstand scrutiny.

to the amount will not defeat recovery." *McKnight v. Hill & Hill Exterminators, Inc.,* 689 S.W.2d 206 (Tex. 1985) (quoting *Southwest Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938)).  Illustrating the first type of uncertainty, which is fatal to the recovery of damages, this Court in *Dyll* reversed a multi-million-dollar damages award in a suit alleging that the defendant breached his fiduciary duty by cancelling a $10 million promissory note in favor of the plaintiff because there was no evidence of the *fact* of damages—the plaintiff offered no evidence that the cancelled note would have been collectible or the technology securing it would have been marketable. 167 F.3d at 947-48.  If anything, the fact of damages in this case is even more uncertain; indeed, the evidence shows that Antero was not damaged at all.

Although Taylor claimed to have reviewed all of the Roberson Companies' invoices and all of the daily completion reports on the 200-plus wells the Robertson Companies serviced for Antero (ROA.30004-05, 30011-13), he did not try to identify (1) the labor or equipment that was allegedly nonproductive or inefficient, (2) the time associated with that labor or equipment, or (3) the specific amount the Robertson Companies billed Antero for the inefficient time.[3] Instead of performing

---

[3] Notably, Antero offered into evidence only a handful of invoices from the Robertson Companies, and no one claimed that anything was wrong with the line items on those invoices.  (ROA.29630-31, 30812-13, 30821-40)

this invoice-by-invoice analysis, Taylor employed what he called a "benchmark" comparison to non-Robertson Companies (ROA.30017), which involved the following steps:

- he first determined how long it took the Robertson Companies to complete the three phases of drillout work—"mov[ing] in the rig," "drill[ing] out the plugs," and "mov[ing] the rig off location" (ROA.30002, 30951-52);

- he next compared that time to the time it took the non-Robertson Companies to do the same three phases of work during the periods when they served Antero (ROA.30000-01, 30017);

- based on his time comparison, he then calculated what he called "credit hours due as a percentage"— although he did not say what the percentage was other than to postulate that if "they were one hour longer" for "a 10-hour event," that "meant they were 10 percent longer" (ROA.30017); and

- he "appl[ied] that percentage against the invoice[s]" of $150,000,000 that Antero paid to the Robertson Companies (ROA.30004, 30017-18).

As a result of this supposedly "very straightforward math," Taylor concluded that the Robertson Companies' "inefficiency cost Antero over $11 million." (ROA.30004-05, 30018)

Taylor's comparative analysis indeed was "straightforward," but it was too conclusory under Texas law to support a verdict.[4]  Even worse, his analysis left out

---

[4] *See Pike v. Texas EMC Management, LLC*, 610 S.W.3d 763, 790 (Tex. 2020) ("[A]n expert's statement or opinion is conclusory"—and therefore is "no evidence"—

a critical step that was *essential* in determining whether or not Antero in fact was damaged as a result of the Robertson Companies' claimed "inefficiency"—namely, identifying and comparing the *rates* the non-Robertson Companies would have charged Antero to do the same work more efficiently. Taylor admitted he did not analyze or compare the "pricing differences between the benchmark companies" and the Robertson Companies (ROA.30503, 30515), and he never grasped the significance of that omission—as illustrated by his hypothetical involving a plumber paid by the hour who takes six hours to fix a valve when "you would rather have a plumber who can do it in one hour" (ROA.30003). The fallacy in that hypothetical, as Kawcak's own expert explained, is that it fails to take into account whether the plumber who takes more time charges a lower rate for his time: "[I]f I take one hour longer but I'm charging 30 percent less, then at the end of the day, I'm less expensive." (ROA.30407-08)

Similarly, the non-Robertson Companies might have performed the work more quickly, but if they billed at a higher rate—perhaps because they employed more manpower or used more equipment—their total invoices could be *higher* than

---

when the expert "offers only his word that the bases offered to support his opinion actually exist or support his opinion."). Here, the second and third steps in Taylor's benchmark comparative analysis were so devoid of detail that the jury had nothing more than his "word" as to whether and to what extent the non-Robertson Companies would have done the same work more quickly than the Robertson Companies.

the total invoices of the Robertson Companies, which took more time but charged a lower rate. Taylor's myopic focus on comparative *time spent*—to the exclusion of comparative *rates charged*—therefore makes it entirely uncertain whether Antero in fact was overcharged as a result of the Robertson Companies' alleged inefficiencies. And under Texas law, such "[u]ncertainty as to the fact of legal damages is fatal to recovery." *McKnight,* 689 S.W.2d at 207.

But there is even more here than just *uncertainty* about whether Antero was damaged: The evidence affirmatively demonstrates that Antero in fact was *not* damaged as a result of paying the Robertson Companies $150,000,000 for their work. Although Antero presented testimony from the top principals of two competitors of the Robertson Companies—Fortis Energy and Mountain States Pressure Service (ROA.30181, 30198)—Antero declined to ask either witness to identify the hourly or daily rates their companies charged to do the same work as the Robertson Companies. But Kawcak knew from dealing with these companies exactly how much they charged, and his testimony was uncontroverted. According to Kawcak, the Robertson Companies charged $30,000 per day for their drillout services. (ROA.30439) In comparison, the only available and eligible competitor was Fortis, and it charged $38,000 per day—approximately 20 percent more than

what the Robertson Companies charged. (ROA.30441-42)[5] If, as Taylor testified, Antero should have paid the Robertson Companies only $138,877,860 based on the time they *should* have taken to do the work (the difference between their total invoices of $150,000,000 and Taylor's "overspent" figure of $11,122,140), then it follows that Fortis would have charged Antero roughly 20 percent more to do the same work in the same amount of time. (*See* ROA.30509)  And that means that Fortis would have charged Antero *more* than the $150,000,000 that Antero paid the Robertson Companies—approximately $166,000,000 ($138,877,860 x 1.2). (*See* ROA.30509) For this additional reason, Antero failed to prove that it was damaged by Kawcak's dealings with the Robertson Companies.

At bottom, the deficiency in Antero's effort to prove that it in fact was damaged by the Robertson Companies is underscored by a simple illustration familiar to the bench and bar—one involving a client who sues his lawyer for overbilling when the lawyer charged a total of $500,000 for 1,000 hours of work at an hourly rate of $500.  The client cannot prove that he was damaged solely through testimony that another lawyer would have done the same work in only 750 hours.

---

[5] Although another company—Basic—charged $32,000 per day, it refused to sign a master service agreement with Antero and thus would not have been an approved vendor for Antero during the relevant period. (ROA.30440) And because Mountain States had no workover rigs in West Virginia during the relevant period, it could not have provided the same drillout services as the Robertson Companies. (ROA.30441)  That left Fortis as the only relevant comparative company. (ROA.30441)

Without knowing what hourly rate the second lawyer would have charged to do the same work in less time, such testimony cannot prove with certainty that the client was actually overbilled at all. Indeed, if the evidence shows that the second lawyer would have charged $750 per hour to do the work in 750 hours, then the client would not have sustained any damages from his own lawyer's inefficiencies—the second lawyer's fee of $562,000 would actually exceed the $500,000 fee charged by the lawyer he sued.

The evidentiary shortcomings in this case are precisely the same. Based on Antero's evidence, it is entirely uncertain whether in fact it was overbilled by the Robertson Companies. And Kawcak's evidence showed that it was not. Either way, Antero failed to prove the fact of legal damages. As a result, the award of $11,122,140 must be reversed. *Dyll*, 167 F.3d at 949 (reversing and vacating award of actual damages based on failure to prove the fact of damage).

## III.  Alternatively, the District Court Erred by Denying Kawcak a Credit for Antero's Settlement With the Robertson Companies Because Its Ruling Gave Antero More Than One Satisfaction for the Same Damages.

At the very least, Kawcak is entitled to a credit against the actual damages awarded in the judgment based on Antero's settlement of its claims against the Robertson Companies. Antero does not dispute that this settlement occurred. (*See* ROA.27967 [admitting that "Antero and the Tommy Robertson Defendants" had "settled in this case"]) Kawcak is therefore entitled to a dollar-for-dollar reduction

14

in any damages award he is required to pay to Antero based upon the amounts the Robertson Companies paid Antero as a part of their settlement. And the district court erred in rejecting Kawcak's request for such a credit. (ROA.29417)

A defendant's entitlement to a settlement credit is a matter of Texas law, and under applicable Texas law, "[a] trial court's determination of the existence or amount of a settlement credit is reviewed for an abuse of discretion." *Dalworth Restoration, Inc. v. Rife-Marshall,* 433 S.W.3d 773, 780 (Tex. App.—Fort Worth 2014, no pet.) (citation omitted). But the district court had "no discretion in determining what the law is or in applying it to the facts" in deciding whether to award Kawcak a settlement credit. *Id.* Those decisions are reviewed de novo. *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1245 (5th Cir. 1994).

A defendant's right to a settlement credit is derived from the "one-satisfaction rule," which Antero agrees is applicable in this dispute. (ROA.27967) That rule provides that "a plaintiff is entitled to only one recovery for any damages suffered." *Coastal Agr. Supply, Inc., Inc. v. JP Morgan Chase Bank*, 759 F.3d 498, 508 (5th Cir. 2014) (quoting *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000)). And "the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability does not modify this rule." *Id.* (quoting *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991)). That means that if a plaintiff settles with one defendant, then the remaining defendant is entitled to a

credit against any judgment in the amount of the settlement as long as the claims against both defendants concern a "single indivisible injury." *Stewart Title*, 822 S.W.2d at 8. Such an indivisible injury occurs whenever "defendants commit the same act as well as when defendants commit technically differing acts which result in a single injury." *Id.* "The rationale for this doctrine is that the plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed." *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993).

There is no question that both the award of damages against Kawcak and Antero's settlement with the Robertson Companies concern a single indivisible injury: the Robertson Companies' alleged overcharges for the drillout services it provided to Antero. Indeed, before Antero ever sued Kawcak, it sued the Robertson Companies claiming that they "deliberately and systematically billed Antero" "for work and services that were either never provided, or provided at an exaggerated price" (ROA.87), and seeking to recover these alleged overcharges as "damages" (ROA.99). Antero's later settlement with the Robertson Companies resulted in the dismissal of its claims for damages based on the Robertson Companies' alleged overcharges (ROA.21819)—and therefore represents compensation for the injury caused by those overcharges.

Antero's damage award against Kawcak is ultimately tied to the same

overcharges. Antero brought suit against Kawcak after learning of his role in retaining the Robertson Companies and his supposed facilitation of their alleged overcharges. And the $11,122,140 found by the jury (ROA.25023) and awarded by the district court (ROA.29424) represents Antero's claim for the value of those same overcharges. The settlement with the Robertson Companies and the damages award against Kawcak are therefore both connected to the same indivisible injury. Accordingly, Kawcak is entitled to a credit for the former against the latter.

Indeed, the district court did not dispute that Kawcak was entitled to a settlement credit for Antero's settlement with the Robertson Companies. It concluded instead that Kawcak was too late in requesting that credit. The district court decided that Kawcak lost the right to claim a settlement credit because he "wholly failed to present any proof of the amount of th[e] settlement at trial" and because the court believed that "Kawcak never moved to compel production of the sealed settlement agreement throughout the course of this case." (ROA.29417) But neither of these supposed failures is any failure at all. And neither should prevent Kawcak from obtaining a settlement credit.

To begin with, there was no reason for Kawcak to present any proof relating to the amount of Antero's settlement with the Robertson Companies at trial, because under applicable Texas law, the jury plays no role in determining either the defendant's entitlement to a settlement credit or the amount of that credit. Instead,

"the court" makes those decisions "when it determines the judgment to render based on the jury's verdict." *Utts v. Short*, 81 S.W.3d 822, 829 (Tex. 2002); *see also Polk v. St. Angelo*, No. 03-01-00356-CV, 2002 WL 1070550, at *4 (Tex. App.—Austin May 31, 2002, pet. denied) (not designated for publication) ("Computation of settlement credits to be offset against a jury verdict is a matter for the trial court, not the jury."). Accordingly, a "nonsettling defendant should raise a settlement-credit issue 'to the trial court[,] not the jury.'" *Dalworth Restoration*, 433 S.W.3d at 784 (quoting *Utts*, 81 S.W.3d at 829). And because the award of a settlement credit is a matter for the court, not the jury, a defendant need not "submit[] evidence relating to its request for a settlement credit to the jury" or obtain "jury findings on the settlement-credit issue" in order to be entitled to a credit, as long as the non-settling defendant places the amount of the settlement "in the record" at some point. *Dalworth Restoration*, 433 S.W.3d at 784.

Notably, the district court entered a limine ruling prohibiting Kawcak from mentioning "the term of any settlements reached between Antero and any named defendant or co-conspirator in this case" or from mentioning that "settlements with alleged co-conspirators [might] impact Kawcak's liability for damages." (ROA.24503) And while the district court was correct that this limine ruling "did not exclude such evidence but only required that [Kawcak] approach the bench outside of the hearing of the jury before seeking to introduce such evidence"

(ROA.29417), that ruling nevertheless signaled that the Robertson Companies' settlement would not be a matter heard by the jury—it would be determined by the court after trial, as is proper under applicable Texas law. Kawcak therefore cannot be faulted for failing to prove at trial matters that are not normally proven at trial, that need not be proven at trial, that Antero objected to mentioning at trial, and that the district court indicated would be proven after trial.

The district court's conclusion that Kawcak forfeited his right to a settlement credit by failing to "move[] to compel production of the sealed settlement agreement throughout the course of this case" (ROA.29417) is also wrong—and factually inaccurate. Kawcak *did* seek to compel Antero to produce the settlement agreement when he asked in his pretrial brief that Antero be "required to divulge whatever amount it received" from the Robertson Companies. (ROA.24190) And he renewed that request in his motion to alter or amend the judgment. (ROA.25752) Accordingly, Kawcak made exactly the demand—both before and after trial—that the district court faulted him for not making.

Furthermore, even if Kawcak had made no pretrial request for information related to the settlement agreement, he still would have been entitled to a settlement credit—and discovery to support it. Because the award of a settlement credit is a matter for the court, and does not become relevant until after the jury returns a verdict awarding damages to a plaintiff, nonsettling defendants routinely request and

obtain information related to settlements after trial. *See, e.g.*, *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 106 (Tex. 2018) (noting that the defendants "requested that [the plaintiff] produce those settlement documents" in response to the plaintiff's "motion for judgment" on the jury's verdict); *Borg-Warner Corp. v. Flores*, 153 S.W.3d 209 (Tex. App.—Corpus Christi-Edinburg 2004), *rev'd on other grounds*, 232 S.W.3d 765 (Tex. 2007) (noting that the trial court granted "post-verdict discovery" on "settlement amounts"). Accordingly, Kawcak cannot be faulted for not moving to compel information relating to the settlement, when he did in fact request that information. Nor can he be faulted for failing to prove the amount of a sealed settlement agreement he did not have. Instead, the district court erred by not granting him access to the settlement agreement as he had requested, and further erred by not granting him a credit based on that settlement.

For either of these reasons, the judgment should be reversed and the case remanded to enable Kawack to prove the amount of the settlement credit he is entitled to receive.

## CONCLUSION

For the reasons stated in Part II, the Court should reverse the award of $11,122,140 along with the corresponding interest, and render judgment that Antero take nothing on its claim for those sums. Alternatively, for the reasons stated in Part III, the Court should reverse the judgment and remand the case to the district court

to determine the amount of the settlement between Antero and the Robertson Companies that should be credited against the damages awarded to Antero.

Respectfully submitted,

/s/ Jeffrey S. Levinger

**Decker A. Cammack**
dcammack@whitakerchalk.com
**Whitaker Chalk Swindle**
  **& Schwartz PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone:  817-878-0500
Facsimile:  817-878-0501

**Jeffrey S. Levinger**
jlevinger@levingerpc.com
**J. Carl Cecere (of counsel)**
ccecere@cecerepc.com
**Levinger PC**
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201
Telephone:  214-855-6817
Facsimile:  214-817-4509

*Attorneys For Appellant*
*John Kawcak*

### CERTIFICATE OF SERVICE

The undersigned certifies that on January 17, 2023, the foregoing Appellant's Brief was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the Appellate CM-ECF System. Participants in this case who are registered CM-ECF users will be served electronically by the Appellate CM-ECF System.  Other participants will be served by e-mail.

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

**CERTIFICATE REGARDING PRIVACY REDACTIONS AND VIRUS SCANNING**

The undersigned certifies that: (1) all required privacy redactions have been made in this brief, in compliance with 5TH CIR. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, in compliance with 5TH CIR. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limit of FED. R. APP. P. 32 (a)(7)(B) because, excluding the parts of the brief exempted by FED. R. APP. P. 32(f):

   ☒    it contains 4,899 words.

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

3. ☒    it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 pt. Times New Roman (and 13 pt. for footnotes).

*/s/ Jeffrey S. Levinger*

**Jeffrey S. Levinger**

*Attorney of Record*
*for Appellant John Kawcak*

January 17, 2023

22